UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| AARON OLSON; DARIN OLSON; DENIS OLSON d/b/a DENIS OLSON RANCH; ANDREW and CATHERINE SYSTMA, husband and wife, d/b/a A&C SYSTMA DAIRY; JAMES BOISSELLE d/b/a BOISELLE FARMS; WILLIAM and MAIDA WILTSE, husband and wife; WILLIAM and MARLA DOMAN, husband and wife; HENRY and FERIS YOUNG, husband and wife; EL RANCHO BELLA VISTA, LLC, a Washington limited liability company; WARREN and EVA SADECKI, husband and wife; and LARRY and INA RAY WIRTA, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES, Department of Interior, Bureau of Indian Affairs, Wapato Irrigation Project,<br><br>Defendant. | NO: 1:14-CV-3166-TOR<br><br>ORDER GRANTING MOTION TO DISMISS |

ORDER GRANTING MOTION TO DISMISS ~ 1

BEFORE THE COURT is the United States' Motion to Dismiss. ECF No. 12. This matter was heard with telephonic oral argument on April 23, 2015. James A. Perkins appeared on behalf of Plaintiffs. Vanessa R. Waldref appeared on behalf of the United States. The Court has reviewed the briefing and the record and files herein and heard from counsel, and is fully informed.

## PROCEDURAL BACKGROUND

Plaintiffs filed a complaint on November 7, 2014, asserting claims of negligence and breach of contract against the United States. ECF No. 1. On February 11, 2015, the United States filed a motion to dismiss the complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). ECF No. 12. For the reasons discussed below, the Court grants Defendant's motion to dismiss.

## STANDARD OF REVIEW

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978) (limits on federal jurisdiction "must be neither disregarded nor evaded"); *see also United States v. Bravo-Diaz*, 312 F.3d 995, 997 (9th Cir. 2002) ("[A] court of the United States may not grant relief absent a constitutional or valid statutory grant of jurisdiction."). Thus, it is presumed that a federal court lacks jurisdiction "unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes of the*

*Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). "The question whether the United States has waived its sovereign immunity against suits for damages is, in the first instance, a question of subject matter jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

"[W]hen considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *Id.* However, when a jurisdictional motion involves factual issues that relate to the merits, the Court should employ the standard applicable to a motion for summary judgment. *Young v. United States*, 769 F.3d 1047, 1052 (9th Cir. 2014). "In that posture, the moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (internal quotation marks and citation omitted). A fact is "material" if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute concerning any such fact is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* In evaluating evidence under this standard, the Court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

ORDER GRANTING MOTION TO DISMISS ~ 3

FACTS

The Wapato Irrigation Project (WIP) is located in south-central Washington State on the Yakima Indian Reservation. ECF Nos. 12-1 at ¶ 3 (Harlan declaration); 12-2 at 1-1 (WIP Operation and Maintenance Guidelines). The Bureau of Indian Affairs (BIA) owns, operates, and maintains all the major irrigation facilities on the Reservation. ECF No. 12-1 at ¶ 4. The WIP provides water to approximately 2,500 users, Indian and non-Indian, on 138,533 acres of assessed land through approximately 1,131 miles of canals, laterals, and drainage ditches and 9,270 structures. ECF Nos. 12-1 at ¶¶ 5, 7; 12-2 at 1-1. Each year the WIP begins delivery of water around mid-March and the irrigation season ends about mid-October. ECF No. 12 at ¶ 15.

The BIA levies assessments and collects dues from water users to cover the WIP's costs of administration, operation, maintenance, and rehabilitation of the irrigation infrastructure. *Id.* at ¶¶ 8–9. The BIA calculates the annual assessment rate by estimating costs for personnel salaries, materials and supplies, vehicle and equipment repairs, equipment costs, depreciation, acquisition costs, maintenance of reserve funds, and other costs. *Id.* at ¶ 10. The WIP Project Administrator is responsible for administering the funds for the operation and maintenance of the WIP and oversees and directs the operations of all staff. ECF Nos. 12-1 at ¶ 19; 12-2 at 1-17.

ORDER GRANTING MOTION TO DISMISS ~ 4

The WIP is divided into four units: Ahtanum, Toppenish/Simcoe, Additional Works, and Wapato/Satus. ECF No. 12-1 at ¶ 6. This matter involves events that occurred in the Toppenish Creek Unit 2 pump house during the 2013 irrigation season. This pump house diverts water from the Toppenish Creek for irrigation. ECF No. 12-5 at ¶ 4 (Nash declaration). Natural runoff in the creek is sufficient in most years to provide water during the early parts of the irrigation season, but the unit relies upon return flows in the creek from the Wapato/Satus Unit as the season advances. *Id.* at ¶ 4, 5. The pump house contains a single 1500 horse power (HP) pump and two 800 HP pumps. *Id.* at ¶ 5. When the 1500 HP pump is running, the two 800 HP pumps act as backup units. *Id.* When the two 800 HP pumps are running, the 1500 HP pump acts as a backup. *Id.*

After the 2012 irrigation season, a WIP pump plant attendant performed a thorough inspection of the pipes in the pump house, as is performed every offseason. *Id.* at ¶ 6. The attendant identified valves and pipe sections that were in need of replacement and replaced those parts. *Id.* at ¶ 7.

In May 2013, during the irrigation season, a pump operator notified the WIP that there were problems with the 1500 HP pump and one of the 800 HP pumps. ECF Nos. 12-5 at ¶ 8; 14-1 at 8 (minutes from May 14, 2013, meeting of Yakima Reservation Irrigation District (YRID)). A small electrical problem with the 800 HP pump was bypassed and it was able to continue operating. ECF No. 12-5 at

ORDER GRANTING MOTION TO DISMISS ~ 5

¶ 9. However, the 1500 HP pump needed extensive repair and refurbishment. *Id.* at ¶ 10. The WIP decided to immediately proceed with repairing the pump to ensure that it was available again for the drier late-summer portion of the irrigation season. ECF No. 12-1 at ¶¶ 26, 27. On June 7, 2013, the BIA awarded a contract to Precision Machine and Supply in Lewiston, Idaho, to provide emergency repairs to the pump. ECF Nos. 21-1 at ¶ 26; 12-4. The contract was in the amount of $95,000 and repairs were to be completed in thirty days. ECF Nos. 12-1 at ¶ 27; 12-4 at 1, 4.

Around 4:00 a.m. on June 24, 2013, a section of pipe in the pump house burst. ECF Nos. 12-5 at ¶ 12; 14-1 at 11 (minutes of July 9, 2013 YRID meeting). This pipe was located just inside the pump house and had been tested for corrosion during the offseason inspection but had not rung hollow or leaked, and had not been identified as requiring replacement. ECF No. 12-5 at ¶ 12. Water sprayed from the burst pipe and ricocheted off the ceiling into one of the two 800 HP pumps causing it to fail. ECF Nos. 12-5 at ¶ 13; 14-1 at 11. With the failure of one of the 800 HP pumps, all the water flowing into the pump house began to pump through the remaining 800 HP pump which caused it to fail as well. ECF Nos. 12-5 at ¶ 13; 14-1 at 11. As noted in a July 9, 2013, meeting of the Yakima Reservation Irrigation District, the entire situation was "a perfect storm" and

resulted in all pumps being off-line at that same time so that the pump house was unable to deliver any water. ECF No. 14-1 at 12.

On June 26, the 800 HP pumps were shipped for repairs. *Id.* The repairs were originally estimated to be completed by June 28, however upon review, the company performing the repairs informed the WIP that the damage was worse than expected and repairs could not be completed for two to three weeks. *Id.* With all of the pumps out of order, the WIP began looking for replacement pumps. *Id.* On June 29, the WIP located a vendor in Colorado who agreed to provide five portable pumps. ECF Nos. 12-5 at ¶ 15; 14-1 at 12. All five pumps were installed and operating by July 6. ECF Nos. 12-5 at ¶ 16; 14-1 at 12. However, the water delivered through these pumps initially was only about fifty percent of the normal water delivery through the pump house. ECF No. 14-1 at 12.

One of the 800 HP pumps was running normally by August 12, 2013. ECF No. 14-1 at 16 (minutes of August 13, 2013, YRID meeting). With the combination of the five portable pumps and the 800 HP pump, the pump house was able to provide full water delivery. ECF No. 14-1 at 16. The second pump continued to have trouble with its bearings and was repaired in Spokane. *Id.* The 1500 HP pump was repaired and was not operational until the beginning of the 2014 irrigation season. ECF No. 12-5 at ¶ 16.

ORDER GRANTING MOTION TO DISMISS ~ 7

Plaintiffs were engaged in business on a variety of agricultural and pasture lands located within the Wapato Irrigation District. ECF No. 1 at ¶ 4. The lack of adequate irrigation water during the 2013 irrigation season caused Plaintiffs to suffer crop losses. *Id.* at ¶¶ 7–8. Plaintiffs submitted administrative claims to the WIP which were either denied or the WIP failed to respond. *Id.* at 9–10. Plaintiffs then filed suit in this Court on November 7, 2014. ECF No. 1.

DISCUSSION

In their complaint, Plaintiffs allege two causes of action against the United States. First, Plaintiffs allege that WIP negligently "failed to properly maintain irrigation systems required for distribution of irrigation water to Plaintiffs, which failure included Defendant's failure to properly administer funds collected from Plaintiffs to fund the operation and maintenance of the Wapato Irrigation Project." ECF No. 1 at ¶ 6. Second, Plaintiffs allege that the WIP breached its contract to provide irrigation water to Plaintiffs. *Id.* at ¶¶ 12–17.

The United States moved to dismiss both claims asserting that the Court lacks subject matter jurisdiction. ECF No. 12. It argues the first claim is barred by the discretionary function exception to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2680(a). ECF No. 12 at 10–18. The United States argues the second claim is barred from being litigated in this Court by the Tucker Act, 28 U.S.C. § 1491(a)(1). *Id.* at 20. The Court will evaluate each claim in turn. As a threshold

matter, however, the Court must determine whether Plaintiffs have alleged an actionable tort over which the Court may exercise jurisdiction under the FTCA.

## I. Actionable Tort Claim

"As sovereign, the United States 'can be sued only to the extent that it has waived its immunity' from suit." *O'Toole v. United States*, 295 F.3d 1029, 1033 (9th Cir. 2002) (quoting *United States v. Orleans*, 425 U.S. 807, 814 (1976)). The FTCA waives the United States' immunity and provides governmental liability for "tort claims . . . in the same manner and to the same extent as a private individual under like circumstances . . . ." 28 U.S.C. § 2674. The federal district courts are granted exclusive jurisdiction for such claims where the government "would be liable in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346. As such, the federal government assumes liability for, and the Court has jurisdiction over, "wrongs that would be actionable in tort if committed by a private party under analogous circumstances, under the law of the state where the act or omission occurred." *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). The Court may address questions of subject matter jurisdiction sua sponte. *Watkins v. Vital Pharms., Inc.*, 720 F.3d 1179, 1181 (9th Cir. 2013). The Court must determine whether Plaintiffs' complaint presents an actionable tort claim under Washington State law.

1   The Washington Supreme Court has articulated the "independent tort duty"

2   test to "distinguish between claims where a plaintiff is limited to contract remedies

3   and cases where recovery in tort may be available." *Eastwood v. Horse Harbor*

4   *Found., Inc.*, 170 Wash. 2d 380, 389 (2010) (en banc).

> An injury is remediable in tort if it traces back to the breach of a tort duty arising independently of the terms of the contract. The court determines whether there is an independent tort duty of care, and the existence of a duty is a question of law and depends on mixed considerations of logic, common sense, justice, policy, and precedent.

8   *Id.* (internal quotations and brackets omitted). "When no independent tort duty

9   exists, tort does not provide a remedy." *Id.*

10   The essence of Plaintiffs' negligence claim is (1) that the WIP had a duty to

11   provide water, (2) that because of WIP's negligence it failed to provide that water,

12   and (3) that this caused damage to Plaintiffs' crops. As Plaintiffs' counsel

13   articulated at the hearing, the WIP had a contractual duty to deliver water and the

14   Plaintiffs had a reciprocal obligation to pay dues for the maintenance and operation

15   of the irrigation infrastructure. Plaintiffs' tort theory is that the WIP's negligent

16   manner of maintaining its facilities deprived Plaintiffs of necessary water thereby

17   causing damage to their crops.

18   However, this theory does not identify a tort duty imposed upon the WIP

19   independent of its contractual obligations. The WIP did not owe an independent

20   duty to the Plaintiffs to ensure that the pump house equipment was functioning

ORDER GRANTING MOTION TO DISMISS ~ 10

properly so long as the water was delivered as required by the contract.  Unlike the government's duties in tort cases such as *O'Toole v. United States*, 295 F.3d 1029 (9th Cir. 2002)—upon which Plaintiffs' rely extensively—the WIP did not breach a non-contractual duty of care to avoid actively inflicting damage upon Plaintiffs' property, such as by causing flooding to adjacent land.  The WIP's alleged negligence did not result in any direct damage to Plaintiffs' property, it only directly caused damage to WIP's property, a burst pipe and two broken pumps.  On the other hand, Plaintiffs' claimed damages were only caused by the failure to supply irrigation water, a contractual obligation.

   Plaintiffs have failed to identify a duty imposed upon the WIP independent of this contractual duty.  As such, no remedy in tort is available to Plaintiffs and the Court lacks jurisdiction to hear this case under the FTCA.  *See Woodbury v. United States*, 313 F.2d 291, 296 (9th Cir. 1963) ("[W]here, as in this case, the action is essentially for breach of a contractual undertaking, and the liability, if any, depends wholly on the government's alleged promise, the action must be under the Tucker Act, and cannot be under the Federal Tort Claims Act."); *cf. Steinbock v. Ferry Cnty. Util. Dist. No. 1*, 165 Wash. App. 479, 490 (2011) ("Because the Steinbocks rely on the service policies (core provisions of their contract with the PUD) and identify no independent duty, they have no negligence claim.").  This conclusion is further confirmed by examining the specific agency

action(s) Plaintiffs challenge in responding to the United States' discretionary function argument.

## II. Discretionary Function Exception

The United States contends that Plaintiffs' tort claim is precluded by the discretionary function exception to the FTCA. ECF No. 12 at 10–20. Plaintiffs contend that the WIP's actions were not related to any policy considerations and therefore do not fall within the exception. ECF No. 13 at 5–10. As articulated below, examining these contentions underscores the Court's conclusion that the nature of Plaintiffs' suit is in contract, not tort.

In the FTCA, Congress provided for express exceptions from the general waiver of sovereign immunity for tort claims. 28 U.S.C. § 2680. The so-called "discretionary function exception" precludes tort liability for

> Any claim based upon an act or omission of an employee of the Government . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). The discretionary function exception "serves to 'insulate[ ] the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment.'" *O'Toole*, 295 F.3d at 1033 (quoting *Berkovitz v. United States*, 486 U.S. 531, 537 (1988)) (alteration in original).

To determine whether the discretionary exception applies to particular governmental actions, courts employ a two-part analysis. *See Young*, 769 F.3d at 1053 (discussing *Berkovitz*, 486 U.S. 531); *O'Toole*, 295 F.3d at 1033 (discussing *United States v. Gaubert*, 499 U.S. 315 (1991)). First, a court must consider "whether the government action at issue . . . involves the exercise of judgment or choice by the agency." *O'Toole*, 295 F.3d at 1033. If the action involved the exercise of judgment or choice, a court must proceed to the second part of the analysis.

At part two of the analysis, a court must examine "whether the government actions at issue 'are of the nature and quality that Congress intended to shield from tort liability.'" *Id.* (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 813 (1984)).

This two-part analysis "requires a particularized analysis of the specific agency action challenged." *Young*, 769 F.3d at 1053 (citation omitted). "[T]he question of how the government was negligent remains critical" to a resolution of the analysis. *Id.* at 1054. Therefore, before engaging in the two-part analysis, the Court must identify the "specific allegations of agency wrongdoing." *Id.* at 1053 (quoting *Berkovitz*, 486 U.S. at 540).

In their complaint, the Plaintiffs' allege that the WIP negligently "failed to properly maintain irrigation systems required for distribution of irrigation water to

1  Plaintiffs, which failure included Defendant's failure to properly administer funds
2  collected from Plaintiffs to fund the operation and maintenance of the Wapato
3  Irrigation Project."  ECF No. 1 at ¶6.  Plaintiffs' complaint does not assert more
4  specific grounds for WIP's negligent actions.
5      In their response to the United States' motion to dismiss, Plaintiffs articulate
6  two specific allegations of negligence:  (1) that, "[i]n particular, the Defendant
7  failed to timely refurbish the pumping equipment at the Toppenish Creek Pump
8  House" and (2) that the WIP failed "to maintain on its staff a properly qualified
9  individual to oversee the maintenance of its systems and equipment."  ECF No. 13
10 at 4, 7.
11     At the hearing on this motion, Plaintiffs' succinctly articulated the
12 challenged action as WIP's "inexcusable delay in acting to have necessary work
13 done" on the 1500 HP pump for over two years after the WIP was notified that
14 such work was necessary.
15     Each articulation of Plaintiffs' theory of negligence focuses on the WIP's
16 failure to adequately manage irrigation infrastructure in a manner that would
17 ensure the delivery of water during the irrigation season.  As discussed above, this
18 specific agency action (or inaction) is encompassed in the contractual arrangement
19 between the parties wherein the WIP provides water in exchange for dues paid by
20 Plaintiffs to finance the maintenance and operation of the system.  Because

ORDER GRANTING MOTION TO DISMISS ~ 14

Plaintiffs have identified no specific tort duty independent of the contract their claims must proceed in contract, not tort. As such, the FTCA is not applicable to the claims and the Court need not consider further whether the alleged actions fall within the discretionary function exemption.

### III. Contract Claim

Plaintiffs contend they have damages amounting to, in the aggregate, $910,386. ECF No. 1 at 6. The United States contends the Court does not have jurisdiction to hear a breach of contract claim for this amount, and that jurisdiction rests solely with the Court of Federal Claims. ECF No. 12 at 20. Plaintiffs respond that the Court has concurrent jurisdiction over the contract claim because of the Court's jurisdiction over the FTCA claim. ECF No. 13 at 11.

The Tucker Act, provides that the "United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States . . . in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The so-called Little Tucker Act grants the District Courts jurisdiction to hear a "claim against the United States, not exceeding $10,000 in amount, founded . . . upon any express or implied contract with the United States . . . in cases not sounding in tort . . . ." 28 U.S.C. § 1346(a)(2). These provisions, read together, "create a presumption of the exclusive jurisdiction in the Court of Federal Claims [for contract claims over

$10,000], but that presumption can be overcome by an independent statutory grant of jurisdiction to another court." *Tritz v. United States Postal Serv.*, 721 F.3d 1133, 1137 (9th Cir. 2013).

Plaintiffs contend that their FTCA claim gives the Court concurrent (or supplemental) jurisdiction over their contract claim. A district court may only exercise jurisdiction over a contract claim if it has an independent statutory grant to hear the contract claim, not simply jurisdiction to hear any other claim brought by the same plaintiff against the same defendant(s). *See Tritz*, 721 F.3d at 1138 (concluding the Postal Reformation Act provides an independent grant of jurisdiction because it "grants district courts jurisdiction over contract claims against the Postal Service"). The FTCA does not grant independent statutory jurisdiction over contract claims. Plaintiffs must pursue their contract claim in the Court of Federal Claims.

**ACCORDINGLY, IT IS HEREBY ORDERED**:

1. The United States' Motion to Dismiss (ECF No. 12) is **GRANTED.**

The District Court Executive is hereby directed to enter this Order and Judgment accordingly, furnish copies to counsel, and **CLOSE** the file.

**DATED** April 23, 2015.



THOMAS O. RICE
United States District Judge

ORDER GRANTING MOTION TO DISMISS ~ 16